**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MARTIN W. SMITH, | ) | Case No. 03-31378 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| D. KEITH ADAMS and ALICE ADAMS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 04-3005 |
| | ) | |
| MARTIN W. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

Count I of the six-count Second Amended Complaint against the Debtor-Defendant, Martin W. Smith ("Debtor"), alleges that the Debtor owes the Plaintiffs a debt that is nondischargeable under 11 U.S.C. § 523(a)(2), (4), and (6). The Plaintiffs now seek summary judgment on the portion of Count I that is based on § 523(a)(4). For the reasons stated below, the Court will deny the Plaintiffs' motion for summary judgment.

**I. STANDARD OF REVIEW**

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact.[2] Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for

---

[1] Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L .Ed. 2d 265 (1986).

[2] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161, 90 S. Ct. 1598, 1611, 26 L. Ed. 2d 142 (1970).

trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion.[3] The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment.[4] In ruling on a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[5]

## II. BACKGROUND

The Court has culled the following uncontroverted facts from the pleadings and attachments thereto:

1. The Debtor was a limited partner in World Capital Management, L.P. ("WCM"), an investment fund.

2. The general partner of WCM was Investors Financial, Inc. ("IFI"), an SEC registered investment advisor.

3. IFI had a trading account at World Securities, Inc. ("WSI").

4. David Taylor, a Missouri attorney, prepared estate planning documents for Plaintiffs and referred Plaintiffs to the Debtor as an investment manager and financial advisor.

5. Plaintiffs were impressed by the Debtor's representations that WSI, IFI, the Debtor, and his partner, Gregory Fears, were experienced and knowledgeable financial planners and investment managers.

6. During 1998 the Plaintiffs invested more than $600,000.00 with WCM, WSI, and IFI.

7. The Debtor was under criminal investigation in 1998.

8. In 2001, the Debtor pled guilty in the District Court for the Western District of Arkansas to, *inter alia*, filing a fraudulent income tax return in October 1998 and to providing Great Southern Bank with false financial statements as part of a scheme to defraud the bank of $528,000 in December 1999.

---

[3] *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts").

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).

[5] *Id.* at 255.

9. These criminal acts were not disclosed to the Plaintiffs.

10. Prior to October 1998, the value of the Plaintiffs' accounts at WCM, WSI, and IFI was $404,771.00.

11. In December 1999, the value of the Plaintiffs' accounts at WCM, WSI, and IFI was $245,623.79.

12. The Plaintiffs have never withdrawn any money from the accounts at WCM, WSI, and IFI.

### III. DISCUSSION

Section 523(a)(4) excepts from discharge debts for fraud or defalcation or fraud "while acting in a fiduciary capacity."[6] The Plaintiffs' motion asserts that the Debtor committed fraud while acting in a fiduciary capacity when he failed to disclose to the Plaintiffs his criminal conduct and the investigation into his criminal conduct. Had those disclosures been made, the Plaintiffs argue, they would have withdrawn their money from the accounts managed by the Debtor before those accounts lost money.

The Plaintiffs' motion for summary judgment is flawed in several respects. First, it misconstrues the statute. Section 523(a)(4) applies to fraud committed *while* a debtor is acting in a fiduciary capacity. The Plaintiffs' motion, however, fails to allege a single instance of fraud while the Debtor was operating in an allegedly fiduciary capacity. The Plaintiffs have offered no evidence that the losses they suffered were the result of the Debtor's fraudulent conduct; rather, the Plaintiffs essentially argue that the Debtor fraudulently *created* the fiduciary relationship, *i.e.*, had they known the Debtor was committing criminal acts, they would not have entrusted him with their money. That conduct, without more, is not encompassed by § 523(a)(4).

In a related vein, the second flaw in the Plaintiffs' motion is that it fails to establish the necessary causation between the Debtor's conduct and the Plaintiffs' losses. There is some appeal to the "but for" logic the Plaintiffs advance – but for the Debtor's misrepresentations, they would not have invested (and lost) their money with the Debtor – but that causal connection is different

---

[6] 11 U.S.C. § 523(a)(4).

3

from "proximate cause" which directly links a debtor's fraudulent conduct to damages.[7]

Finally, the Plaintiffs' motion for summary judgment fails due to the existence of at least three material issues of fact:

1.   The uncontroverted facts do not establish as a matter of law that the Debtor owed a fiduciary duty to the Plaintiffs.  It is disputed as to whether the Debtor was the Plaintiffs' "stockbroker," and the mere title of "broker" does not necessarily confer fiduciary status;[8] additional evidence is necessary to evaluate whether the Debtor was in a fiduciary relationship with the Plaintiffs, as that relationship is defined by federal law.[9]

2.   The uncontroverted facts do not establish as a matter of law that the Debtor's conduct was the proximate cause of the Plaintiffs' loss.

3.   The "fact" that the Plaintiffs did not know about the criminal investigation of the Debtor at the time the Plaintiffs entrusted him with their money is controverted.

## IV.  CONCLUSION

Upon consideration of the uncontested facts and the arguments of the parties, the Court will DENY the Plaintiffs ' motion for summary judgment.

**SO ORDERED** this 26th day of September, 2006.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Spencer P. Desai
Joseph D. Sheppard, III

---

[7] *See In re Cantella and E.F. Hutton and Co., Inc. Securities Litigation*, 583 F. Supp. 1388, 1415 (E.D. Penn. 1984) (drawing distinction between "transaction causation" and proximate cause).

[8] *See* 4 Collier on Bankruptcy ¶ 523.10[1][c] (Lawrence P. King et al. eds., 15th ed. 2004).

[9] *See In re Eggleston*, 243 B.R. 365, 376 (Bankr. W.D. Mo. 2000).